Green MILLER Jr., Plaintiff,

v.

Lester PORETSKY et al., Defendants.

Civ. A. No. 1772–72.

United States District Court,
District of Columbia.

March 11, 1976.

Curtis E. von Kann, Allen R. Snyder, A. Roy DeCaro, Washington, D. C., for plaintiff.

Charles R. Donnenfeld, James K. Stewart, Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This is an action in which plaintiff Green Miller, Jr., charges the defendants with discrimination in housing. The action is brought pursuant to the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, and the Fair Housing Act of 1968, 42 U.S.C. § 3601, et seq. The case is before the Court for a determination of the res judicata effect upon the instant action of a proceeding before the District of Columbia Commission on Human Rights which involved some of the parties and issues raised herein.

A recitation of the pertinent portion of the complex procedural history of this case is necessary before turning to the merits of the question before the Court. On August 10, 1972, plaintiff filed an administrative complaint with the Department of Housing and Urban Development, pursuant to 42 U.S.C. § 3610, charging Poretsky Management Company and related parties with an attempted retaliatory eviction from the Crestwood Apartments in Washington, D.C. Pursuant to 42 U.S.C. § 3610(c), the complaint was referred to the District of Columbia Office of Human Rights. On September 1, 1972, plaintiff filed the instant action, seeking money damages and injunctive

relief for alleged discrimination as to him and for an alleged pattern of racial discrimination engaged in by defendants. On May 4, 1973, the District of Columbia Commission on Human Rights issued a decision concluding that the defendants had engaged in discriminatory conduct at the Crestwood Apartments but that the plaintiff had not been evicted in retaliation for his opposition to that conduct. The Commission's finding was appealed to the District of Columbia Court of Appeals; shortly thereafter, this Court stayed trial in this matter until the administrative proceedings reached a conclusion. In August of 1973, the Commission issued a more elaborate order in plaintiff Miller's case, having previously reached the conclusion that the original order did not contain sufficient findings of fact to support the conclusions it reached. Notwithstanding this remedial action, the District of Columbia Court of Appeals found, on April 4, 1975, that the revised order did not contain sufficient findings of facts and conclusions of law. Shortly thereafter, plaintiff informed the Commission that he did not wish to pursue the administrative proceeding any further, since he had relocated and was therefore no longer interested in the relief sought when he originally filed the complaint—a prohibition of his threatened eviction at the Crestwood Apartments. The Commission proceeded, nonetheless, to once again issue revised findings of facts and conclusions of law, and plaintiff again appealed to the District of Columbia Court of Appeals. That appeal is currently pending.[1]

■ As mentioned above, the question before the Court is the *res judicata* effect of the Commission proceeding on the instant action. The question is best approached by separating plaintiff's action into its cause-of-action components. Turning first to the Federal Housing Act claim, the Court notes that plaintiff instituted the administrative proceeding pursuant to 42 U.S.C. § 3610. Under § 3610(d), a party can institute a civil action in federal district court after efforts have been made on the administrative level. Under 42 U.S.C. § 3612(a), a party can institute a civil action which is separate from the administrative process.[2] The cause of action provided by § 3612(a) has been interpreted as an independent remedy under the Act, and it is not necessary that § 3610 remedies be exhausted before a § 3612 action is brought. *Miller v. Poretsky,* No. 72–2094 (D.C.Cir., Order of Feb. 21, 1973); *Johnson v. Decker,* 333 F.Supp. 88 (N.D. Cal.1971). The § 3610 procedure "might be described as similar to a settlement conference . . . ." *Johnson, supra,* 333 F.Supp. at 91. In light of this statutory scheme, it would make little sense to give *res judicata* effect to a proceeding arising out of the § 3610 procedure. A party faced with the possibility that his efforts to resolve the case on the administrative level might have some *res judicata* effect on his cause of action provided by § 3612 would simply forego the § 3610 option, as would be his or her right. *Johnson, supra.* The obvious purpose of § 3610, to encourage informal settlement of housing discrimination

1. There are other procedural threads in this case which were not mentioned above because they are not directly relevant to the question before the Court. Specifically, there was an eviction action brought by Poretsky Management in Superior Court in September of 1972. Poretsky succeeded on the trial court level, and Miller was evicted. The eviction was overturned by the District of Columbia Court of Appeals in May 1974, but since Miller had already relocated, Poretsky voluntarily dismissed the action following remand by the Court of Appeals.

In addition, this action was dismissed by this Court in October 1972 for plaintiff's failure to exhaust his administrative remedies with the Commission. That dismissal was reversed by the United States Court of Appeals for this circuit in February 1973, the court finding that plaintiff had a right to pursue administrative and judicial remedies concurrently under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

2. The only connection between § 3610 and § 3612 is that the trial judge in an action brought pursuant to § 3612(a) or § 3610(d) can, in his discretion, continue said action pending the outcome of efforts on the administrative level initiated pursuant to § 3610(a). See 42 U.S.C. § 3612(a). It was under this authority that this Court continued the instant action.

claims, would thus be frustrated. *Cf. Batiste v. Furnco Construction Corp.,* 503 F.2d 447, 450 (7th Cir. 1973); *Wageed v. Schenuit Industries, Inc.,* 406 F.Supp. 217 (D.Md.1975).

■ This case is also brought under 42 U.S.C. §§ 1981 and 1982. In general, § 1981 has been held by the Supreme Court to provide an independent remedy for private discrimination. *Johnson v. Railway Express Agency,* 421 U.S. 454, 460–61, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295, 301–302 (1975); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47–50 & n. 7, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147, 157–159 (1974). In the specific context of the Fair Housing Act, the court in *Johnson v. Decker,* 333 F.Supp. 88 (N.D.Cal.1971), found that administrative remedies under 42 U.S.C. § 3610(a) need not be exhausted before an action is maintained under 42 U.S.C. § 1981, *Id.* at 92. Other courts have found that the Fair Housing Act and 42 U.S.C. § 1982 are similarly independent remedies. *Warren v. Norman Realty Co.,* 513 F.2d 730, 732–33 (8th Cir. 1975); *Hickman v. Fincher,* 483 F.2d 855, 856–57 (4th Cir. 1973). It would seem that the strength of a scheme providing overlapping statutory remedies for discrimination would be sapped if a resolution of one of those remedies were to be given *res judicata* effect as to the other remedies, and thus, in effect, bar the latter. *See, Alexander v. Gardner-Denver, supra.*[3]

■ In a recent case decided by Judge Kaufman of the District of Maryland, *Wageed v. Schenuit Industries, Inc., su-* pra, plaintiff brought an employment discrimination action under 42 U.S.C. § 1981. The plaintiff · had previously filed charges with the Maryland Commission on Human Relations, and the issue before the court was the *res judicata* effect of the Commission proceeding on the court action. Following, *inter alia,* the authorities set forth above, Judge Kaufman found that it would be improper to give *res judicata* effect to the Commission proceedings in the subsequent § 1981 action. "As far as this Court can ascertain, there is nothing in the language in any of the opinions of the Supreme Court . . . which suggests that a plaintiff is barred pursuant to the doctrine of *res judicata* in a subsequent federal action under 42 U.S.C. §§ 1981– 85 if he chooses to exhaust state remedies and loses at the state administrative level. Indeed, the indications in the case law are to the contrary." *Id.* at 222. Moreover, the court concluded, "denial of *res judicata* effect . . . is more consistent with the intent of . . . Congress and with encouragement to plaintiffs first to pursue available state and federal administrative channels in their quest for relief from discriminatory employment practices than is the opposite conclusion." *Id.* at 224. This Court finds the *Wageed* case directly relevant to the case at bar and is swayed by its reasoning and the other authorities cited above. Accordingly, this Court finds that the proceedings of the District of Columbia Commission on Human Rights shall not be afforded *res judicata* effect in the instant action.

---

**3.** The same conclusion can be drawn from a close reading of *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The question before the Court in *Johnson, supra,* was whether the filing of an employment discrimination charge with the Equal Employment Opportunity Commission pursuant to § 706 of ·Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, tolled the running of the limitation period for an action brought under 42 U.S.C. § 1981. In holding that the statute was not tolled, the Court stressed the independence of the avenues of relief provided under Title VII and § 1981. The Court recognized the criticism that its holding would undermine conciliatory efforts under Title VII by forcing litigants into court to protect their § 1981 rights. In response, the Court noted that "the plaintiff in his § 1981 suit may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed." 421 U.S. at 465, 95 S.Ct. at 1723, 44 L.Ed.2d at 304. That suggestion would make little sense if it is envisioned that administrative proceedings are to be given *res judicata* effect in subsequent § 1981 proceedings.

Having decided the only pending motion before the Court,[4] it is also necessary to decide at this point whether this case shall go to trial or remain stayed pending the outcome of the administrative proceedings, now on appeal to the District of Columbia Court of Appeals. As noted above, this Court stayed the instant action in order to allow the administrative process to run its course and, perhaps, to provide an amicable settlement of this case. At this stage of the case, however, and especially in light of the Court's finding that the Commission proceeding will have no *res judicata* effect, the Court believes it would not be in the interests of justice to further delay plaintiff's trial.[5] Accordingly the Court will schedule a status call for the near future, at which a trial date will be set.

An Order in accordance with the foregoing will be issued of even date herewith.

4. Defendants have also asked the Court to reconsider their prior motion to strike plaintiff's jury demand, which the Court has denied on two occasions. The Court stands on its previous denials, but will make clear its reasons for doing so in order to avoid any further confusion. Plaintiff filed his jury demand within ten days after the service of his reply to defendants' counterclaim. The demand was therefore timely as to the issues raised by the counterclaim, which has since been dropped, see Fed.R.Civ.P. 38(b), but the issue is whether it was also timely as to the issues raised in the complaint and answer. The general rule is that

"If the counterclaim raises the same issues as are raised by the answer, a demand not later than ten days after the reply is effective for those issues. But if the counterclaim and reply raise new issues, . . . a demand served more than ten days after

the answer but not later than ten days after reply is only effective for the issues raised in the counterclaim and reply . . . ." 9 *Wright and Miller, Federal Practice and Procedure,* § 2320, at 93 (1971).

Examination of the counterclaim in this case led the Court to believe that the issues raised therein are "related to plaintiff's claim" and arise "out of the transaction or occurrence that is the subject matter of plaintiff's claim." 5 *Moore's Federal Practice* § 38.39[2], at 318 (1975), and cases cited therein. The Court accordingly denied defendants' motion.

5. It is possible, of course, that if the Court of Appeals reaches a decision before this case comes to trial, that decision and related administrative proceedings will have evidentiary value at trial. The question of the evidentiary value of such a decision is not, however, before the Court at this time.